**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BARTRAM YIHNI DABNEY,

Plaintiff,

- v -                                                    Civ. No. 9:11-CV-273
                                                              (LEK/RFT)

DONALD SAWYER, *Executive Director, Marcy Mental Health Hospital*, JOANN WALDRON, *Chief of OMH Satellite, Clinton Correctional Facility*, DR. BERGEN, *Psychiatrist, Clinton Correctional Facility*, DR. LEE, *Medical Director, Clinton Correctional Facility*, DR. FAROOKI, *Dentist*, SARA NEPHEW, *OMH Therapist, Clinton Correctional Facility,* RON DUMONT, *Nurse, Clinton Correctional Facility*, C.O. BEESHAW, *Correctional Officer, Clinton Correctional Facility*, DR. BATTU, *Psychiatrist, Great Meadow Correctional Facility*, J. NOCERA, *Assistant Inspector General, Department of Correctional Services*, V. DONAHUE, *Social Worker, Great Meadow Correctional Facility*,

Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

**BARTRAM YIHNI DABNEY**
Plaintiff, *Pro Se*
93-A-7310
Clinton Correctional Facility
P.O. Box 2002
Dannemora, NY 12929

**ERIC T. SCHNEIDERMAN, ESQ.**          **CHARLES J. QUACKENBUSH, ESQ.**
Attorney for Defendants                 Assistant Attorney General
Attorney General of the State of New York
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Bartram Yihni Dabney brings this Complaint, pursuant to 42 U.S.C. §§ 1983, 1985, and 1986, alleging that Defendants (1) failed to properly investigate his claim that he was beaten by corrections officers, (2) were deliberately indifferent to his serious medical and mental health needs, (3) failed to provide him with a coat and long underwear to wear during outdoor recreation throughout the winter months, (4) retaliated against him for a lawsuit he filed against guards and other personnel at a different prison, (5) kept him confined in cruel and unusual conditions, (6) conspired to deprive him of his constitutional rights, (7) discriminated against him because of his race, and (8) failed to protect him from one another. *See generally* Dkt. No. 1-1, Compl.[1]  Defendants move for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c), on three of Plaintiff's claims.[2]  *See generally* Dkt. No. 48-1, Defs.' Mem. of Law. As explained below, we recommend that Defendants' Motion be **GRANTED** in part and **DENIED** in part**.**

## I.  STANDARD OF REVIEW

FED. R. CIV. P. 12(c) provides, in pertinent part "[a]fter the pleadings are closed . . . any party may move for judgment on the pleadings."  "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6)."  *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816 (1994) (citations omitted).  On a motion to dismiss,

---

[1] Plaintiff submitted both a typewritten and handwritten version of the Complaint, at Docket Numbers 1 and 1-1 respectively.  However, by Order of the Honorable Lawrence E. Kahn, Senior United States District Judge, the handwritten version of the Complaint is now the operative pleading in this case.  *See* Dkt. No. 42, Dec. & Order, dated Aug. 7, 2012.

[2] Defendants' Memorandum of Law only addresses Plaintiff's deliberate indifference, failure to investigate and failure to provide adequate winter clothing claims.  *See generally* Dkt. No. 48-1, Defs.' Mem. of Law; *see also infra* Part II.F.

the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (emphasis in original)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n.6 (1963); *see also Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's

complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

With this standard in tow, we consider the plausibility of Plaintiff's Complaint.

## II. DISCUSSION

### A. Background

While an inmate at Great Meadow Correctional Facility ("GMCF"), Plaintiff filed a grievance alleging that on May 21, 2010, he had been beaten by eighteen GMCF corrections officers Compl. at ¶¶ 30–31; *see also* Dkt. No. 52, Pl.'s Opp'n at pp. 2–3. In addition to grieving the issue,

Plaintiff also filed a lawsuit in federal court. Compl. at ¶ 50.[3] After the assault, Plaintiff was charged with the possession of a weapon and sentenced to one-year in a special housing unit ("SHU"). Compl. at ¶ 41. In June of 2010, Defendant J. Nocera, an Assistant Inspector General with the Department of Corrections and Community Supervision ("DOCCS"), came to Plaintiff's cell to investigate the alleged assault. Plaintiff showed Defendant Nocera a part of a tooth that had been knocked out as well as black and blue marks around his eye. Nonetheless, Defendant Nocera reported that he could find no evidence to support Plaintiff's claim that he was assaulted by multiple guards at GMCF. *Id.* at ¶¶ 30–31.

Prisoners with certain enumerated mental health issues are classified as "S" or serious. Plaintiff has been diagnosed with four conditions which qualify for "S" classification, including substance induced psychotic disorder, major depressive disorder, delusional disorder, and post traumatic stress disorder ("PTSD"). *Id.* at ¶¶ 36–37. Unlike ordinary SHU inmates who are locked up twenty-four hours a day, inmates who are designated "S" classification are eligible to attend a "rehabilitation program to deal with their sickness" *in lieu* of ordinary SHU. *Id.* at ¶ 40. On June 28, 2010, Defendant Dr. Battu,[4] a Psychiatrist with the Office of Mental Health ("OMH"), and Defendant V. Donahue, a Social Worker with OMH, falsified Plaintiff's medical records and downgraded Plaintiff's mental health classification from "S" to a less serious classification. *Id.* at ¶¶ 34–36. As a result, when Plaintiff was transferred to Clinton Correctional Facility ("CCF") on

---

[3] In paragraph 50 of his Complaint, Plaintiff cites to *Dabney v. Lapolt et. al*, 9:10-cv-00519. However, Plaintiff filed his complaint in that case on April 20, 2010, a month before the alleged assault at GMCF occurred on May 21, 2010. We believe that Plaintiff meant instead to refer to *Dabney v. Fischer*, 9:10-CV-1109 (N.D.N.Y. Sept. 9, 2010) (GTS/TWD), which specifically references the May 21, 2010 incident, *see id.* at Dkt. No. 1, Compl.

[4] In the Complaint, Plaintiff mistakenly spells Defendant Battu's name as "Battle," "Batter," and "Battie." *See generally* Compl.; *see also* Dkt. No. 41, Rep.-Rec. & Order, dated July 17, 2012, at p. 1 n.3.

July 1, 2010, he was placed in ordinary SHU rather than in a rehabilitation program. *Id.* at ¶¶ 42–43 & 51. While in SHU, Plaintiff experienced "major depression," he stopped going to recreation, was not showering, and sometimes did not eat. *Id.* at ¶ 42. Plaintiff was also being affected more by "the voices" he was hearing. *Id.* at ¶ 43.

On July 2, 2010, the day after he was transferred to CCF, Plaintiff put in a request to see a doctor about a sore rib he thought may have been cracked during the incident at GMCF. On July 3, Plaintiff made an additional request to see the doctor regarding his Hepatitis C, as well as a request to see the dentist regarding a tooth that was cracked during the incident at GMCF. *Id.* at ¶ 51. On August 5, Plaintiff requested an "emergency" appointment with the dentist "[be]cause the broken tooth became infect[ed]." Compl. at ¶ 53; Pl.'s Opp'n at ¶ 15. On July 12, Plaintiff made another request to see the dentist regarding his tooth "[be]cause it was cutting into [his] lip when [he] ate." Pl.'s Opp'n at ¶ 15.

Plaintiff met with Defendant Dr. Farooki, CCF's Dentist, on August 6, 2010. Compl. at ¶¶ 3(e) & 53; Pl.'s Opp'n at ¶ 15. Defendant Farooki took x-rays, acknowledged the the tooth was infected, and prescribed medication for the infection. Defendant Farooki told Plaintiff he would schedule an appointment to have the tooth pulled after the infection had subsided. \ Compl. at ¶ 53; Pl.'s Opp'n at ¶ 15–17. However, Plaintiff was not called back to the dentist's office "after the infection went away." Pl.'s Opp'n at ¶ 17. Ultimately, Plaintiff's tooth was not pulled until ten months later. *Id.* Plaintiff "wrote the Dentist['s] office about this [delay but] Ron Dumont be [sic] throwing [his] sick call slip[s] away." Compl. at ¶ 53.

Plaintiff saw Defendant Dr. Lee, a Medical Doctor at CCF, on August 20, 2010. At that time, Dr. Lee refused to provide Plaintiff with any treatment for his Hepatitis C, and refused to x-ray

Plaintiff's rib to determine whether it was cracked. Compl. at ¶ 52. Afterward, when he would place sick-call requests on the bars of his cell, Defendant Dumont would "become harsh" and "disrespectful," and refuse to give Plaintiff his rash and hemorrhoid creams or turn Plaintiff's sick-call slips for pain medication. *Id.*

In October of 2010, Defendant Beeshaw, a Corrections Officer ("CO") at CCF, refused to feed Plaintiff,[5] and moved him from a "quiet gallery" to an area where he could not sleep because "young prisoner[s] and older prisoners [were] on the gates all day yelling and banging" because Plaintiff had "checked [Defendant Beeshaw] on accusing [him] of something [he did] not do." *Id.* at ¶ 43. On August 18, Plaintiff went to Mental Health OBS, "the area w[h]ere they house serious mental health prisoners away from ever[y]one else," and told an unidentified "official" that he was going to "cut up." *Id.*

As a result, Plaintiff was transferred to Mental Health OBS where he remained for seventeen days. "[T]he officials of DOC[C]S up in the mental health OBS keep the light on all day in the cell[,] they turn on the cold air which make you suffer cause all you have is a short smock no sock[s] no under wear [and] 3 thin mats to sleep on[.] Many times[s] DOC[C]s official[s] do not give you sugar with your cereal hot or cold, they steal your dessert, [and] you don't get coffee." *Id.* at ¶¶ 44–45. While in OBS, Plaintiff attempted to get Defendants Dr. Bergen,[6] a Psychiatrist at CCF, and Sara Nephew,[7] an OMH Therapist at CCF, to transfer him from SHU to the serious mental health

---

[5] It is unclear from the Complaint how long or how many times Defendant Beeshaw refused to feed Plaintiff.

[6] In the Complaint, Plaintiff mistakenly refers to Defendant Bergen as Defendant "Berggen" *See generally* Compl.; *see also* Dkt. No. 41, Rep.-Rec. & Order at p. 1 n.1.

[7] In his Complaint Plaintiff named "Sharon Lockridge," however, according to the Defendants' Counsel, this Defendant's correct name is "Sara Loughran," but she is now known as "Sara Nephew." Dkt. No. 41, Rep.-Rec. & Order at p. 1 n. 2.

rehabilitation program because the environment in SHU was "oppressing" him. *Id.* at ¶¶ 45 & 48.

Plaintiff had broken off the sharp pieces of a chicken bone and began saving doses of his Ultram pain

pills so that "when [he] cut up [he] could bleed out without feeling pain." *Id.* at ¶ 46. However, an

official found Plaintiff's stash of pills, wrote him up for misconduct, and Defendant Dr. Lee took

Plaintiff off of pain medication. *Id.* In November of 2010, Plaintiff was put back in the same SHU

cell and once again he could not sleep because of "the noise . . . [and] banging late at nite [sic]." *Id.*

at ¶ 47. Nonetheless, Defendants Nephew and Bergen refused to remove Plaintiff from SHU, and

on November 1 or 8, Plaintiff "cut up" and was put back in OBS. *Id.*

Around the end of November 2010, Defendant CO Foley refused to issue Plaintiff a winter

coat and longjohns to protect him from the winter weather during his daily hour-long recreation

period. *Id.* at ¶¶ 55 & 56. Defendant Foley told Plaintiff to "go to recreation without a coat, or just

don't go." *Id.* at ¶ 55. Plaintiff went to recreation without a coat, which caused the chronic arthritis

in his back and neck to act up. *Id.*

## B.  Exhaustion

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "no action shall

be brought with respect to prison conditions under section 1983 of this title, or any other Federal law,

by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that

"the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they allege excessive force or

some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted). Exhaustion is

similarly required even if the prisoner asserts futility as an excuse. *See Booth v. Churner*, 531 U.S.

731, 741 n.6 (2001) (refusing to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.") (cited in *Marvin v. Goord*, 255 F.3d 40, 43 (2d Cir. 2001)). Accordingly, the exhaustion requirements apply even where the grievance process does not permit an award of money damages and the prisoner seeks only money damages, provided the grievance tribunal has the authority to take some responsive action. *See Thomas v. Wright,* 2002 WL 31309190, at *5 (N.D.N.Y. Oct. 11, 2002) (citing *Booth v. Churner*, 531 U.S. 731 (2001)).

New York State's administrative remedies consist of a three-step review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees.[8] N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id*. Second, if the IGRC decision is appealed, the superintendent of the facility reviews the IGRCs determination and issues a decision. *Id*. at § 701.5(c). Finally, if the superintendent's decision is appealed, the Cental Office Review Committee ("CORC") makes the final administrative determination. *Id*. at § 701.5(d). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court. *Bridgeforth v .Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. 516, 524 (2002)); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

While failure to exhaust is an affirmative defense to be plead by the defendant, and a plaintiff is under no obligation to plead exhaustion, "[i]f a prisoner chooses to plead facts regarding

---

[8] The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chair (who may be an inmate, staff member or volunteer). N.Y. COMP. CODES R. & REGS tit.7, § 701.4.

exhaustion, and those facts plausibly suggest that he failed to exhaust his available administrative remedies, then his complaint may be dismissed for failure to state a claim." *Morris v. Rabsatt*, 2010 WL 4668440, at * 2 (N.D.N.Y. Oct. 18, 2010) (LEK/GHL) (citing *Jones v. Bock*, 549 U.S. 199, 211–17 (2007)); *see also Paulino v. Costello*, 2007 WL 963301, at *4 (N.D.N.Y. Mar. 30, 2007) (LEK/DEP) (citing *Torrence v. Pesanti*, 239 F. Supp. 2d 230, 231–32 (D. Conn. 2003) for the proposition that "[d]ismissal of a prison inmate's civil rights complaint on the procedural basis of failure to exhaust would be appropriate [on a motion to dismiss] only if, from a review of the complaint and any attached materials, a failure to exhaust under the PLRA was readily apparent or unambiguously established in the record.") (internal citation and quotation marks omitted).

In the instant case, it is neither readily apparent nor unambiguous from the face of the Complaint that Plaintiff failed to exhaust his claims. Plaintiff repeatedly alleges that he exhausted his mental health/medical claims, or that he was prevented from doing so by the actions of officials at OMH and DOCCS. *See, e.g.,* Compl. at ¶¶ 17, 18, & 20. And, although Plaintiff does not mention filing any grievances regarding his other claims, as noted above, Plaintiff is under no obligation to plead exhaustion. Moreover, to the extent Plaintiff claims that DOCCS and OMH officials purposefully interfered with his grievances, it is possible that such behavior would constitute the type of "special circumstances" wherein Defendants would be estopped from raising the affirmative defense of exhaustion. *See Giano v. Goord*, 380 F.3d 670, 676–77 (2d Cir. 2004) (noting that there are some "special circumstances" which can estopp defendants from pleading failure to exhaust as an affirmative defense, and that "estoppel [is appropriate] in cases where prison officials inhibit an inmate's ability to utilize administrative grievance procedures") (citations omitted); *Cf. Paulino v. Costello*, 2007 WL 963301, at *4-5 (refusing to grant 12(b)(6) motion to

dismiss on exhaustion grounds where "given [the] opportunity, plaintiff could raise a genuine issue of material fact regarding his fulfillment of the PLRA duty to exhaust or a cognizable basis for excusing that requirement") (citations omitted).

Therefore, we recommend that Defendants' Motion be **DENIED** without prejudice on exhaustion grounds, and that Defendants be permitted to re-raise this affirmative defense upon a fuller record.

### C. Improper Investigation

Plaintiff alleges that in June of 2010, Defendant Nocera, an Assistant Inspector General with DOCCS, was sent to investigate a grievance Plaintiff filed in May of 2010 alleging that eighteen corrections officers at GMCF assaulted him. Compl. at ¶¶ 30–31; *see also* Pl.'s Opp'n at pp. 2–3. Despite seeing Plaintiff's injured eye and broken tooth, Defendant Nocera's investigation report states that "he found nothing to support [Plaintiff's] grievance or complaint on the May 21, 2010 assault." Pl.'s Opp'n at p. 3; *see also* Compl. at ¶¶ 30–31.

Such allegations do not state a claim for relief under § 1983. To begin with, "[i]t is well established . . . that inmate grievances procedures are undertaken voluntarily by the states, that they are not constitutionally required, and accordingly that a failure to process, investigate or respond to a prisoner's grievances does not in itself give rise to a constitutional claim." *Marrero v. Kirkpatrick*, 659 F. Supp. 2d 422, 426 (W.D.N.Y. 2009) (citing *Swift v. Tweddell*, 582 F. Supp. 2d 437, 445-46 (W.D.N.Y. 2008)); *see also Partak v. Behrle*, 2011 WL 7629500, at *6 (N.D.N.Y. Sept. 12, 2011) (citing cases for the proposition that "[i]nmates do not enjoy a constitutional right to an investigation of any kind by government officials"). Moreover, even where, as in the instant case, authorities choose to investigate a prisoner's complaint, the Constitution does not guarantee a fair and balanced

investigative process. *Cf. Mahotep v. DeLuca*, 3 F. Supp. 2d 385, 390 n.3 (W.D.N.Y. 1998) (dismissing claim that officers violated inmate's due process rights through falsifying documents and lying during grievance investigation because inmate grievance procedures do not give rise to a protected liberty interest requiring Fourteenth Amendment's procedural protections) (citations omitted). Therefore, because Plaintiff "does not claim Mr. Nocero injured some other recognized constitution[al] right," Pl.'s Opp'n at p. 3, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's improper investigation claim.

### D. Medical and Mental Health Claims

To state an Eighth Amendment claim for denial of adequate medical or mental health care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Langley v. Coughlin*, 888 F.2d 252, 254 (2d Cir. 1989) (concluding that that "psychiatric or mental health care is an integral part of medical care. It thus falls within the requirement of *Estelle v. Gamble*, [] that it must be provided to prisoners."). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06).

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result

*-12-*

in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

### 1. Mental Health Care

Plaintiff alleges that he was denied adequate access to mental health care while confined in CCF's SHU between July 1, 2010, and the filing of his Complaint on December 30, 2011. Compl. at ¶ 42. More specifically, Plaintiff claims that (1) prior to being transferred from GMCF to CCF,

Defendants V. Donahue and Dr. Battu purposefully lowered the seriousness of his mental health rating so that he would be sent to ordinary SHU rather than a mental health rehabilitation program where he would receive mental health treatment, *id.* at ¶¶ 36 & 39, and (2) after arriving at CCF Defendants Savage, Waldron, Bergen, Sawyer, and Nephew refused to move him from SHU to a rehabilitation program despite the fact that he experienced "oppression," loss of sleep, was hearing voices, and had suicidal thoughts and attempted suicide, *see id.* at ¶¶ 42–47 & 49; Pl.'s Opp'n at ¶¶ 9–11. In their Motion Defendants assert that (1) Plaintiff has failed to claim that Defendants "consciously, and inhumanely, deprived him of treatment," and (2) Plaintiff's allegations amount to a mere difference of opinion between a doctor and his patient over the course of treatment, which is not actionable. Defs.' Mem. of Law at p. 8.

Here, Plaintiff alleges that he had been diagnosed with substance induced psychotic disorder, major depressive disorder, delusional disorder, and PTSD. Compl. at ¶ 37. Defendants concede, and we agree, that these conditions are sufficiently serious for purposes of the Eighth Amendment. Defs.' Mem. of Law at pp. 7–8; *see also Loadholt v. Lape*, 2011 WL 1135934, at *3 (N.D.N.Y. Mar. 3, 2011) (citing cases for the proposition that "allegations of mental illness, especially when accompanied with suicidal ideation, state a plausible claim that Plaintiff's mental health needs were sufficiently serious"). However, we disagree with Defendants' characterization of the Plaintiff's allegations as lacking any indication of deliberate indifference or merely depicting a difference of opinion between a doctor and his patient.

According to the facts alleged in the Complaint, Plaintiff has plausibly alleged that his various mental health diagnoses were known to Defendants Sawyer, Waldron, Savage, Donahue, Battu, Bergen and Nephew. Plaintiff claims that he brought it to the attention of Defendant Joann

Waldron, OMH's Unit Chief at CCF's Satellite, Defendant Donald Sawyer, OMH's Executive Director, and Defendant Savage, an OMH Therapist, that, as a result of being locked up in CCF's SHU, he "was going through major depression[,] not going to recreation[,] not going to the shower [and] sometimes not eating"; and, that nonetheless, he was denied adequate mental health care from July 1, 2010 to December 30, 2010. Compl. at ¶ 42. Likewise, Plaintiff alleges that he repeatedly asked Defendants Bergen and Nephew to take him out of SHU because "SHU was oppressing [him] [he] was thinking of harming [him]self and the voices was effecting [sic] [him]," but they refused. Compl. at ¶¶ 45 & 47. Moreover, accepting as true Plaintiff's allegations that Defendants Donahue and Battu falsified Plaintiff's medical records in order to take away his "S" classification, it is certainly plausible that they would have been aware of the conditions for which Plaintiff was originally classified as "S." Thus, Plaintiff has plausibly alleged that these Defendants were aware that Plaintiff suffered from mental health conditions which were objectively serious and without proper treatment may have resulted in significant harm to Plaintiff.

With regard to the subjective element of a deliberate medical indifference claim, we begin by noting that Plaintiff alleges that Defendants Sawyer, Savage, Battu, Bergen, and Nephew consciously if not maliciously disregarded their awareness of his deteriorating condition in retaliation for a lawsuit he filed against personnel at GMCF.[9] Compl. at ¶¶ 39, 42, & 47; *see also supra*, at n.3. Plaintiff's Complaint also plausibly alleges that Defendants Waldron and Sawyer were liable in their supervisory capacities because they were aware of the facts that Plaintiff was not receiving adequate care, that his condition was worsening, and yet they failed to remedy the situation. *See* Compl. at ¶¶ 42 & 58; *see also Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (holding that a supervisory

---

[9] As noted previously, Defendants do not seek dismissal of Plaintiff's retaliation claim.

official may be liable in their supervisory capacity where " the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring") (citations omitted).

And, while upon a fuller record Defendant Donahue's and Defendant Battu's decision to downgrade Plaintiff's serious mental health status may prove to be nothing more than an in-actionable determination as to the appropriate course of care,[10] at this early stage, it is plausible that intentionally depriving a patient of mental health care in retaliation for his having filed a lawsuit is so "'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society[,]'" that such an act would nonetheless qualify as deliberate indifference to a known serious medical need. *Ross v. Kelly*, 784 F. Supp. at 44.

Likewise, with regard to Plaintiff's allegations against Defendants Bergen and Nephew, it would appear that Plaintiff "alleges not [a disagreement over the] 'choice of a certain course of treatment' but rather, the 'absence of help.'" *Randle v. Alexander*, 2013 WL 2358601, at *18 (S.D.N.Y. May 30, 2013) (citing *Hathaway I*, 37 F.3d at 70). Granted, Plaintiff was transferred to OBS for observation after he threatened suicide and after he "cut up." However, there is no indication that he was medicated or counseled while there despite his mental health history and diagnoses. Therefore, it is plausible that Defendants Bergen and Nephew were deliberately indifferent to Plaintiff's medical needs in spite of their knowledge that he was experiencing increasing symptomology of his known mental illnesses over an extended duration. *See id.* at

---

[10] It is clear that a disagreement between a doctor and his patient regarding the proper course of treatment does not give rise to a claim for deliberate medical indifference. *Chance v. Armstrong*, 143 F.3d at 703; *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d at 303, 312 (S.D.N.Y. 2001) (noting that "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a section 1983 claim"). It is also clear that an inmate is not entitled to what ever form of medical care he may desire. *See Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).

*16–18 (concluding that "a plausible inference from Randle's Complaint, where all his allegations are taken as true, is that the Mental Health Defendants were acutely aware of Randle's deteriorating mental state and refused his transfer to the less restrictive program to which he had been accepted for reasons unrelated to his well-being and health, evincing deliberate indifference to those needs").

Based upon the above, we recommend that Defendants' Motion be **DENIED** as to Plaintiff's deliberate indifference claim as it relates to his mental health.

### 2. Physical Health Care

Plaintiff alleges that (1) Defendant Dr. Lee failed to adequately treat him for serious physical ailments, including Hepatitis C, a sore rib, and a cracked and infected tooth, *see* Compl. at ¶¶ 51–53; and (2) Defendant Dumont attempted to delay or prevent Plaintiff from receiving medical care by throwing away his sick call slips, *id*. at ¶¶ 52 & 53. Defendants argue that "other than some delay in seeing a physician upon coming to Clinton C.F. [Plaintiff] claims no deficiency in treatment" and, "Plaintiff's dissatisfaction and disagreement with his medical services cannot provide a basis for a plausible Eighth Amendment claim." Defs.' Mem. of Law at pp. 8–9.

### a. Broken Tooth

Plaintiff claims that he suffered from a broken tooth, and although he admits that he received some treatment for this condition, he maintains that the treatment received was either inadequate or unconstitutionally delayed. *See* Compl. at ¶¶ 51 & 53. According to Plaintiff, he initially requested a dentist's appointment to have his cracked tooth pulled on July 3, 2010, when he first arrived at CCF. On July 12, Plaintiff requested another dentists appointment because his tooth was cutting his lip while he ate. Nonetheless, he did not receive an appointment with the dentist until August 6, 2010, after he made a third request on August 5 for "emergency" treatment because his tooth had

become infected.  On August 6, CCF's Dentist, Defendant Dr. Farooki, x-rayed Plaintiff's teeth,

acknowledged that the tooth was infected, and provided Plaintiff with a prescription for antibiotics

to treat the infection.  He also informed Plaintiff that he would pull Plaintiff's tooth after the

infection had cleared up. However, Plaintiff's tooth was not pulled after the infection cleared up;

rather, Plaintiff's tooth was not pulled until ten months later.  *Id.*; Pl.'s Opp'n at ¶¶ 15–17.

In certain circumstances, a broken tooth may be considered sufficiently serious for purposes

of stating a medical deliberate indifference claim.  For example, courts have found broken teeth to

be sufficiently serious in cases where the broken tooth causes extreme pain, and there is a likelihood,

that if left untreated, the condition of the tooth would degenerate or cause an inability to engage in

normal activities.  *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see also Mendoza*

*v. McGinnis*, 2008 WL 4239760, at *9–10 (N.D.N.Y. Sept. 11, 2008) (citing cases, including *Chance*

*v. Amrstrong.*).

Plaintiff's condition took on varying degrees of intensity during the period at issue.  For

example, Plaintiff alleges that, between July 3, and July 12, he was suffering from a cracked tooth.

Such an injury on its own, without any indication of pain or suffering, is clearly not a sufficiently

serious injury for purposes of an Eighth Amendment claim.  On the other hand, by August 5,

Plaintiff had made it known that he was suffering from a cracked tooth, which was causing him to

cut his lip while he ate, and that the tooth was infected.  An infected tooth, if left untreated for

sufficient time, can certainly degenerate and it is reasonable to draw the inference in both instances

that he experienced pain.  Thus, on August 5, Plaintiff clearly was suffering from a sufficiently

serious condition.

Yet, it is also clear that upon learning of the infection, Defendant Farooki provided x-rays

and medication to treat the infection. Thus, there can be no claim that when Plaintiff's condition was at its most serious, Defendant Farooki failed to provide Plaintiff with adequate medical care. However, the question that remains is whether Plaintiff was suffering from a sufficiently serious injury between July 12 and August 5, or during the interval between when Plaintiff's infection went away and the tooth was finally pulled ten months later. At this early stage, and construing all inferences in Plaintiff's favor, we find that it is plausible that continually biting one's lip while eating, causing it to bleed, would both interfere with a person's ability to go about their daily lives as well as cause substantial pain. *Chance v. Armstrong*, 143 F.3d at 708. Therefore, to the extent that Plaintiff has alleged that Defendant Farooki allowed him to suffer in this state for a prolonged period of time, he has plausibly alleged that Defendant Farooki was deliberately indifferent toward his serious medical needs.

Moreover, Plaintiff also claims that Defendant Dumont, a CO at CCF, was throwing away the sick-call slips Plaintiff was using to alert Dr. Farooki of the pain his cracked tooth was causing as well as treatment requests for other unrelated medical conditions.[11] Compl. at ¶¶ 52 & 53. At this stage, such an allegation is sufficiently plausible to allege that Defendant Dumont consciously disregarded Plaintiff's serious medical/dental needs by denying or delaying his access to medical/dental care. *See Jean v. Barber*, 2011 WL 2975218, at *5 (N.D.N.Y. July 21, 2011) (noting that non-medical personnel such as guards are deliberately indifferent to an inmate's medical needs where 'they intentionally deny or delay access to medical care'") (citations omitted); *see also Baumann v. Walsh*, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999) ("Non-medical prison personnel

---

[11] It is unclear from the Complaint to what extent Defendant Dumont was successful in his alleged attempts to prevent Plaintiff from receiving dental care. While it may be the case that none of Plaintiff's requests reached Defendant Farooki, which would exculpate Defendant Farooki from any liability for his failure to pull Plaintiff's tooth immediately after the infection subsided, to reach such a conclusion on the instant record would be premature.

engage in deliberate indifference where they "intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel.").

Therefore, we recommend that Defendants' Motion be **DENIED** as to Plaintiff's inadequate dental care claims against Defendants Farooki and Dumont.

### b. Hepatitis C

It is clear that Hepatitis C is a sufficiently serious medical condition for purposes of the Eighth Amendment. *Rose v. Alvees*, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004) (citing cases). Moreover, Plaintiff specifically requested treatment for his Hepatitis C, and Dr. Lee refused to provide any treatment. Compl. at ¶¶ 51 & 52. Thus, Plaintiff has plausibly alleged that Defendant Lee was aware of and consciously disregarded a serious risk to Plaintiff's health. Therefore, we recommend that Defendants' Motion be **DENIED** as to Plaintiff's denial of adequate Hepatitis C treatment claim against Defendant Lee.

### c. Cracked Rib

Plaintiff also alleges that Defendant Dr. Lee refused to give him an x-ray to determine whether or not he had a cracked rib. Compl. at ¶¶ 51–52. Plaintiff's claim does not sufficiently allege a cause of action pursuant to § 1983.

To begin with, disputes over what tests or diagnostics should be utilized during treatment do not give rise to Eighth Amendment claims. *See Scott v. Laux*, 2008 WL 4371778 at *4 (N.D.N.Y. Sept. 18, 2008) ("disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists ... are not adequate grounds for a § 1983 claim.") (quoting *Magee v. Childs,* 2006 WL 681223, at *4 (N.D.N.Y. Feb. 27, 2006)) (internal

quotation marks omitted). Moreover, Plaintiff states only that he thought he may have had a cracked rib, not that he actually had a cracked rib. Plaintiff fails to allege that this condition ever caused him any pain whatsoever. Nor has Plaintiff alleged that he continued to request treatment for his rib or that his rib continued to hurt during the several months that elapsed between August 28, 2010, when he claims that he was denied care by Defendant Lee, and December 30, when he filed this federal action. Therefore, it is not plausible to suggest that Plaintiff's sore rib was a sufficiently serious condition for purposes of an Eighth Amendment deliberate medical indifference claim. *Compare McMillon v. Davidson*, 873 F. Supp. 2d 512, 514 (W.D.N.Y. 2012) (finding that a fractured rib was a sufficiently serious injury in light of Plaintiff's claims that he suffered extreme pain), *with Dzwonczyk v. Syracuse City Police Dep't*, 710 F. Supp. 2d 248, 268 (N.D.N.Y. 2008) ("Plaintiff's allegation of a bruised rib does not satisfy the requirement of a sufficiently serious deprivation.").

Therefore, we find that Plaintiff has failed to state a claim upon which relief could be granted and dismissal would be appropriate with regard to Plaintiff's allegations that Dr. Lee failed to provided adequate medical treatment for his sore rib. However, in light of Plaintiff's *pro se* status, we recommend that this claim be **DISMISSED** without prejudice and that Plaintiff be **GRANTED** leave to amend in order to afford him an opportunity to correct these deficiencies. *See Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (cautioning courts in this District from dismissing *pro se* complaints "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated"); *see also Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) ("Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the [*pro se*] complaint gives any indication that a valid claim might be stated.").

### E. Inadequate Winter Clothing

"Prison officials may be held liable . . . for failure to provide adequate clothing, if (1) the inadequacy is sufficiently serious *and* (2) the official's failure is the result of his sufficiently culpable state of mind — i.e., his deliberate indifference to the inmate's health." *Koehl v. Bernstein*, 2011 WL 2436817, at *18 (S.D.N.Y. June 17, 2011) (emphasis in original) (internal quotation marks and citations omitted). Courts consider "the length of exposure and temperatures experienced" when determining the seriousness of the deprivation. *Taylor v. Halladay*, 2010 WL 3120036 (N.D.N.Y. July 1, 2010) (citing *Gaston v. Coughlin,* 249 F.3d 156, 164–65 (2d Cir. 2001)).

Here, Plaintiff claims that between October 2010 and March 2011, Defendant Foley, a CO in SHU and the State Shop Officer at CCF, refused to provide Plaintiff with a winter coat and long johns to protect him from the winter weather during his daily one-hour outdoor recreation period; and that as a result of going outdoors without the proper clothing, his chronic arthritis in his neck and back flared causing him to experience pain. Compl. at ¶¶ 55–56; *see also* Pl.'s Opp'n at ¶¶ 18–19.

Even accepting Plaintiff's allegations as true that he was not provided adequate clothing to protect him from Northern New York's winter weather for an hour a day, such a deprivation is not "sufficiently serious" for purposes of the Eight Amendment – particularly here, where Plaintiff could easily have avoided any such exposure by staying inside. *See Tafari v. McCarthy*, 714 F. Supp. 2d 317, 357-58 (N.D.N.Y. 2010) (dismissing on summary judgment plaintiff's claims that he was exposed "on many occasions" to "below zero weather" for an hour at a time during his recreation period); *see also Koehl v. Bernstein*, 2011 WL 2436817, at *18 (citing *Tafari v. McCarthy*) (finding that plaintiff's inadequate winter clothing claim could not "survive in light of the fact that [he] had

a mechanism to stay warm in winter by staying indoors; any time he chose to spend outdoors in the cold was not prolonged, and no substantial harm has been alleged"). Here, Plaintiff has not alleged that he was forced outside, nor does the fact that his chronic arthritis flared constitute the type of "substantial harm" that would give rise to a constitutional violation.

Therefore, we find that Plaintiff has failed to state a claim upon which relief could be granted regarding the adequacy of his winter clothing, and dismissal would be appropriate. However, in light of Plaintiff's *pro se* status, we recommend that this claim be **DISMISSED** without prejudice and that Plaintiff be **GRANTED** leave to amend in order to afford him an opportunity to correct these deficiencies. *See Thompson v. Carter*, 284 F.3d at 416.

### F. Plaintiff's Remaining Claims

Construed liberally, Plaintiff's complaint raises additional claims for retaliation, conditions of confinement, conspiracy pursuant to § 1985, racial discrimination, and failure to protect pursuant to § 1986. Specifically, Plaintiff has alleged that (1) in retaliation for filing a lawsuit against personnel and guards at GMCF, Defendants Dr. Battu and V. Donahue took away his serious or "S" level mental health classification thereby preventing him from serving his term of SHU confinement in a rehabilitative setting designed for mentally ill inmates, Compl. at ¶¶ 32 & 39; (2) Defendants Savage, Waldron, Bergenn, Sawyer, and Nephew conspired together, in violation of § 1985, to deny Plaintiff adequate mental health treatment and/or transfer Plaintiff from SHU to a serious mental illness rehabilitation program, *id.* at ¶¶ 42 & 47; (3) the conspiracy to deprive him of his constitutional right to adequate mental health treatment was undertaken in retaliation for Plaintiff's having filed a lawsuit against guards and other personnel at GMCF, *id.* at ¶¶ 42 & 47; (4) Defendant Beeshaw withheld food from Plaintiff and purposefully transferred him from a quiet area of SHU

to a noisier section where he could not sleep because other inmates were constantly banging on the walls and screaming in retaliation for his having "checked him on accusing [him] of something [he did] not do[,]" *id.* at ¶ 43; (5) Defendant Dr. Lee refused to re-prescribe Ultram for Plaintiff, and Defendant Foyle deprived Plaintiff of adequate winter clothing because he is black, *id.* at ¶¶ 54 & 55; (6) conditions in the OBS ward were unconstitutional, *id.* at ¶¶ 44–45; and (7) each of the Defendants "had the opportunity to protect the Plaintiff from the unlawful action[s] of the other [D]efendants but . . . failed and refused to perform such duty[,]" *id.* at ¶ 57.[12]

As Defendants have not addressed these allegations in their Motion for Judgment on the Pleadings, *see generally* Defs.' Mem. of Law, we do not reach the plausibility of Plaintiff's allegations on these issues.

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion (Dkt. No. 48) be **GRANTED** in part and **DENIED** in part as follows:

1.    **GRANTED** as to Plaintiff's improper investigation claim against Defendant J. Nocera;

2.    **GRANTED** without prejudice as to Plaintiff's inadequate winter clothing claims against Defendant T. Foley;

3.    **GRANTED** without prejudice as to Plaintiff's inadequate medical care for his sore rib against Dr. Lee;

4.    **DENIED** as to Plaintiff's inadequate mental health care claims against Defendants Sawyer, Waldron, Savage, Donahue, Battu, Bergen, and Nephew;

---

[12] Plaintiff also claims that the "NYS Dept[.] of Correctional Service[s] and the Mental Health and the Medical Department, failed to properly train and supervise the conduct of its employees with regard to the conduct of the Defendants described herein[.]" Compl. at ¶ 58. However, we do not construe a failure to train claim from this allegation because Plaintiff fails to direct these claims against any of the named Defendants.

5.  **DENIED** as to Plaintiff's inadequate physical health care claim against Defendant Lee regarding his Hepatitis C;

6.  **DENIED** as to Plaintiff's inadequate dental care claim against Defendant Farooki; and it is further

**RECOMMENDED,** that the following claims, which were not addressed by Defendants in their Motion for Judgment on the Pleadings (Dkt. No. 48), should proceed

1.  Plaintiff's retaliation claims against Defendants Donahue, Bergen, Beeshaw, Savage, Waldron, Sawyer, and Nephew

2.  Plaintiff's conspiracy claims against Defendants Savage, Waldron, Bergen, Sawyer and Nephew;

3.  Plaintiff's racial discrimination claims against Defendants Lee and Foley;

4.  Plaintiff's failure to protect claims against all Defendants; and it is further

**RECOMMENDED** that if the above recommendations are accepted, Plaintiff should be directed to file an amended complaint that cures some of the deficiencies cited herein. Such amended complaint should be filed within thirty (30) days of the Memorandum-Decision and Order issued by the District Judge. If Plaintiff filed an amended complaint, the file shall be returned to the undersigned so that it can be reviewed. If Plaintiff opts not to file an amended complaint within the allotted time, then Defendants Lee and T. Foley should be terminated from this action without further order from the Court as Plaintiff has failed to plausibly allege their personal involvement in any constitutional wrongdoing, and it is further

**ORDERED**, that if the above recommendations are accepted by the District Judge, the file should be forwarded to the Undersigned so that the stay[13] can be lifted and new scheduling deadlines can be set; and it is further

---

[13] Discovery was stayed on May 9, 2012. Dkt. No. 40, Text Order, dated Oct. 10, 2012.

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).


Date:  September 13, 2013
         Albany, New York


Randolph F. Treece
U.S. Magistrate Judge